IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL NO. 1:CV-99-2128** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **6.45 ACRES OF LAND, MORE OR LESS, SITUATED IN CUMBERLAND TOWNSHIP, ADAMS COUNTY, COMMONWEALTH OF PENNSYLVANIA; HANS G. ENGGREN AND CHRISTINA A. ENGGREN, Husband and Wife, their Heirs and/or Assigns; UNKNOWN OWNERS; and UNKNOWN LESSEES, *et al.*,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

On March 14, 2006, following the Third Circuit's opinion in *U.S. v. 6.45 Acres of Land*, 409 F.3d 139, 141 (3d Cir. 2005), this court held a telephonic conference with counsel for the United States, Overview Limited Partnership ("Overview"), and Hans and Christina Enggren ("the Enggrens").  For the reasons that follow, the court will amend the judgment of March 17, 2003 and enter judgment of 3.932 million dollars against the United States and order Overview and the Enggrens to proceed to arbitration to determine the distribution of the award.

I.      **Background**

On November 27-29, 2001, the court conducted a non-jury trial for the purpose of determining the fair market value of 6.45 acres of land that were the

subject of a condemnation action brought by the United States.[1]  During the non-jury trial, the court heard from three experts: Robert Von Ancken on behalf of Overview; David Lenhoff on behalf of the Government; and William Siverling on behalf of the Enggrens.  Following the non-jury trial, the court issued Findings of Fact and Conclusions of Law.  (Doc. 216.)  On March 17, 2003, the court ordered the United States to pay 2.7 million dollars to the Enggrens and 3.932 million dollars to Overview.  (Doc. 266.)  The Government timely appealed, and the Third Circuit reversed and remanded the court's March 17, 2003 order.

## II.        **Discussion**

During the March 14, 2006 telephonic conference, the following issues were raised: 1) whether the court should assess the value of Tract 4-203 and Tract 4-204 collectively or separately; 2) whether the court's assessment of the value of the Tracts should include lease payments from Overview to the Enggrens; and 3) whether the court should hold an additional hearing to determine if 3.932 million dollars accurately reflects the value of the Tracts as calculated under the unit rule.[2] The court will address each issue in turn.

---

[1]On May 17, 2000, the United States filed a Declaration of Taking regarding five parcels of land located in Gettysburg, Pennsylvania.  These parcels are designated as follows: Tract 4-203; Tract 4-204; Tract 4-108; Tract 4-109; and Tract 4-220.  The five tracts consist of two fee interests and three road easements.

Overview owned Tract 4-204 in fee and Tracts 4-108 and 4-109, which are easements.  The Enggrens owned Track 4-203 in fee and the easement interest in Tract 4-220.  At the time of the taking, the parcels were improved by a 307-foot observation tower located on Tract 4-203 called the Gettysburg National Tower ("National Tower").

[2]The unit rule provides that "the amount of compensation to be paid must be determined as if the property was in a single ownership and without reference to conflicting claims or liens."  *U.S. v. 25.936 Acres of Land*, 153 F.2d 277, 279 (3d Cir. 1946) (citations omitted).

A.   **The Collective or Separate Assessment of Tract 4-203 and Tract 4-204**

The Third Circuit provided that the court could have "separately valued Tract 4-203 and Tract 4-204 while still adhering to the unit rule." *Id.* at 148 n.15. However, for the reasons that follow, the court finds that there is no practical approach to value the Tracts separately from one another, and the court will not do so.

On Tract 4-204, which is owned in fee simple by the Enggrens and leased to Overview, is the National Tower. On Tract 4-203, which is owned in fee simple by Overview, is a gift shop, a restaurant, and a parking lot. The court finds that without the parking lot located on Tract 4-203 the potential revenue generated by the National Tower, and thus the value of Tract 4-204 is substantially diminished. Likewise, the revenue of the gift shop and the restaurant, and thus the value of tract 4-203 would be substantially diminished without the attraction of the National Tower.

Suffice it to say, the values of Tract 4-203 and Tract 4-204 are interrelated in such a way that it is practically impossible to appraise their value without reference to one another. For this reason, and because the Third Circuit did not rule otherwise, the court will consider Tract 4-203 and Tract 4-204 along with the right of way easements designated as Tract 4-108, Tract 4-109, Tract 4-220 as one unit for purposes of determining their value.

The court recognizes that valuing the Tracts as one unit necessitates a further dividing of the interest in the value of the award between the Enggrens and Overview. Because the lease between the Enggrens and Overview contains an arbitration clause, the court will order the parties to proceed to arbitration to apportion the value of the award.

**B.    Inclusion of the lease Payment From Overview to the Engrrens**

In accordance with the Third Circuit's opinion, the court will vacate its award of 2.7 million dollars to the Enggrens based upon the lease payments paid by Overview.  According to the Third Circuit, this court erred when "it strayed from the clear path of the unit rule and, . . . 'double counted' a key component of its estimate of the land's value . . . ."  *Id.* at 141.  Specifically, the Third Circuit found that the Government's expert, Lenhoff, valuation of the fee as a whole did not include lease payments as an expense to Overview because the lease payments were "merely a transfer of funds between interest holders that would cancel out under a unit valuation."  *Id.* at 149.  Thus, Lenhoff's valuation of the fee "did not exclude-but rather included-the value of Enggrens' interest in those payments."  *Id*. at 150.  Accordingly, the court erred when it separately valued Enggrens' interest in the fee at 2.7 million dollars.

The court finds that the opinion of the Third Circuit is clear, and it will not separately include a valuation of the lease payments to the Enggrens.  Nor will the court include, under the unit rule valuation of the fee, the lease payments attributable to the Enggrens.

**C.    The Need for an Additional Hearing to Determine the Value of the Fee**

During the March 14, 2006 telephonic hearing, counsel for Overview suggested that an additional hearing is necessary to determine whether the court's finding of fact with respect to the calculation of expenses is correct.  For the reasons that follow, the court will not hold an additional hearing.

During the non-jury trial, the court heard from the Government's expert and Overview's expert with respect to the National Tower's expenses and the National Tower's "capture rate" of visitors to Gettysburg National Military Park.

On behalf of the Government, Lenhoff estimated that expenses would be 60 percent of the revenue generated by the National Tower. (Tr. at 529.) Lenhoff based his estimation of expenses on the National Tower's past expenses which ranged from 66.9 percent to 75.6 percent. (*Id*. at 528.) Additionally, Lenhoff looked to expenses of natural and cultural non-theme parks and determined that a 76.4 percent expense rate was a reasonable average of the Tower's expenses. (*Id.* at 527.)

Lenhoff applied the 60 percent expense rate to an estimated capture rate of 5.4 percent. (*Id*. at 529.) Lenhoff based his estimate of the capture rate upon the National Tower's capture rate for the three years preceding his testimony. (*Id*. at 521.)

While Overview's expert, Von Ancken, did provide the court with an estimation of expenses, he did not provide the court with a percentage figure. Rather, Von Ancken provided the court with an actual dollar amount based upon a 13 percent capture rate. (*See id.* at 117, 128.) Von Ancken proposed that the 13 percent capture rate could be achieved with an aggressive marketing campaign, an aggressive advertising campaign, a change in management, a change in the video audio presentation, and a change in the access to the National Tower. (*Id*. at 117, 168.)

While the court rejected Von Ancken's assertion that the capture rate could be increased to 13 percent, the court did give some credence to Von Ancken's testimony. The court concluded that a hypothetical buyer could make changes that would result in increased revenue and attendance, and that an 8 percent capture rate was a reasonable estimation. (Doc. 216, Finding of Facts at 23.) Additionally, the court accepted Von Ancken's testimony that ticket prices could be raised by a dollar. (*Id*.) The court applied the 60 percent expense rate, as estimated by Lenhoff, to an 8 percent capture rate with a dollar increase for the admission price. (*Id.* at 26.)

According to Overview, a hearing is now necessary to determine the percentage of expenses that would result at an 8 percent capture rate with the increased ticket price.  Overview asserts that if 60 percent is a reasonable rate of expenses amount at a capture rate of 5.4 percent, then 60 percent would not be a reasonable rate of expenses at a capture rate of 8 percent.  Overview's reasoning is that certain base expenses would not increase with the increased capture rate, thus 60 percent applied to an 8 percent capture rate with a dollar admission increase represents an inflated amount of expenses.

The court disagrees.  To begin, the court notes that Lenhoff's estimation of expenses was lower than the National Tower's past expenses or expenses of other natural and cultural non-theme parks' average expenses.  Additionally, the court's rationale for providing an increased capture rate from 5.4 percent to 8 percent was based on improvements and aggressive marketing and advertising campaigns.  The court will not speculate as to the costs associated with improvements, marketing, and advertising, except to note that they are substantial expenses; therefore, it is reasonable to estimate that the expense rate would increase proportionally to an increase in the capture rate.  Finally, the court notes that the Third Circuit stated that "[t]he Government convincingly argues that the District Court's $3.932 million valuation of Overview's interest should have represented the *total* value of the land."  *6.45 Acres of Land*, 409 F.3d at 150 n.17.

The court decided to use a 60 percent expense rate in light of an 8 percent capture rate with increased admission prices.  The court made this determination after careful consideration of the experts' testimonies.  No additional testimony is necessary with respect to this issue.

Finally, because the court is proceeding under the unit rule and will not consider lease payments in its valuation of the fee, the court's valuation of

Overview's interest in its Finding of Facts and Conclusion of Law (Doc. 216) accurately reflects Overview and the Enggrens' interest in the value of the fee as a whole.

**III.**      **Conclusion**

In light of the Third Circuits opinion and the foregoing discussion, the court will value Tract 4-203 and Tract 4-204 along with the right of way easements designated as Tract 4-108, Tract 4-109, and Tract 4-220 at 3.932 million dollars. The court will enter judgment against the United States and for Overview and the Enggrens.  Pursuant to Article XIV of the lease between Overview and the Enggrens, the court will direct Overview and the Enggrens to proceed to arbitration to determine a division of the judgment.  The court finds that it is not necessary to hold any additional hearings in the captioned matter.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  March 27, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL NO. 1:CV-99-2128** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **6.45 ACRES OF LAND, MORE OR LESS, SITUATED IN CUMBERLAND TOWNSHIP, ADAMS COUNTY, COMMONWEALTH OF PENNSYLVANIA; HANS G. ENGGREN AND CHRISTINA A. ENGGREN, Husband and Wife, their Heirs and/or Assigns; UNKNOWN OWNERS; and UNKNOWN LESSEES,** *et al.,* | : | |
| **Defendants** | : | |

# O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The judgment of March 17, 2003 (Docs. 266, 268, 269) is hereby amended.  Judgment shall be entered collectively in favor of Overview Limited Partnership and Hans and Christina Enggren and against the United States in the amount of 3.932 million dollars.

2) In accordance with Article XIV of the lease agreement between Overview Limited Partnership and Hans and Christina Enggren, said parties shall proceed to arbitration to determine their respective interest in the award of judgment.

    3) If necessary, the arbitrator shall make any adjustment to account for interest payments previously made.  At the close of arbitration, the remainder of any balance remitted to the Clerk of Court by the United States for just compensation shall be refunded to the United States along with all applicable interest to the remainder's sum.


                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  March 27, 2006.